Our second case for argument today is Salvatore Ziccarelli v. Sheriff Dart, Appeal No. 19-3435. We will be hearing from Ms. Mullen. I am still adapting to our combination of some in-person and some remote arguments, and then we have Ms. Mohan, who is appearing for amicus, I see you on the screen, and then we have Ms. Ory, all right, so we're ready to go, Ms. Mullen. Good morning, and may it please the Court. My name is Hannah Mullen. I represent Mr. Salvatore Ziccarelli. Defendants interfered with Mr. Ziccarelli's FMLA rights when they discouraged him from taking leave. They also interfered with his rights when they failed to provide him with information required under the regulations. Finally, they retaliated against Mr. Ziccarelli by constructively discharging him. I'd like to begin with the discouragement as interference claim. Under the text of the statute, the regulations, and this Court's decision in Preddy, an employer interferes with an employee's FMLA rights by discouraging him from taking leave. Outright denial of an employee's FMLA request is not required. As this Court's decision in Preddy says at page 818, a defendant's motion for summary judgment must be denied if a jury reasonably could find that the discussions between the employer and the employee were meant to convey the message that if the employee missed additional time, there would be adverse consequences. Preddy clearly states that the key question is whether the employer's actions would discourage a reasonable employee from taking leave. Your Honors, applying that standard here, a jury could reasonably find that Ms. Shinawi's comments were meant to convey the message that if Mr. Ziccarelli took additional FMLA time, there would be adverse consequences. At page 46 of the record, Mr. Ziccarelli makes a phone call to notify the FMLA office of his intent to take leave, and Ms. Shinawi responds, quote, you've taken serious amounts of FMLA. Don't take any more FMLA. If you do so, you will be disciplined. Under Preddy, Your Honors, nothing more is required. I would note that these comments in the record are more expressed in terms of their threat of discipline, their threat of adverse consequences, than the comments in Preddy, where the principal said to the teacher, you've missed a lot of school, you can't take off, isn't there somebody who could pick up your son? And so we're actually far beyond Preddy in terms of how expressed the threats of discipline were on this record. And so crediting Mr. Ziccarelli's testimony at the summary judgment stage, we think this claim should get to a jury. Can I ask a practical question? Why did Mr. Ziccarelli not just take sick leave? Your Honor, he thought he would be disciplined if he did so. He had paid sick leave, right? That's right. In fact, plenty of it. Yes, Your Honor. He thought that he would be disciplined. He thought that what Missionary was saying was that he couldn't miss additional time, not only as to the FMLA, but as to his sick time as well. So you all have developed very well in your briefs the arguments about the text of the statute, and obviously there's some court opinions from this and other circuits that sometimes get a little loose in the language about denial and interference and so on. What I'm struggling with here is the issue of harm or prejudice to Mr. Ziccarelli. Is there anything other than his constructive discharge theory to account for his harm? Your Honor, I think the facts are the same under the interference theories and under the constructive discharge theory in terms of what happened to him and how he was harmed. But we think that's sufficient under our interference theory. Lutz says that prejudice exists where an employee would have structured his leave differently absent the discouragement. And we know from the record that when Mr. Ziccarelli called Missionary, he was intending to stay employed and take his FMLA leave and exhaust his remaining paid sick leave. And so, Your Honor, he went into that phone conversation intending to take his leave, but he was so discouraged by Missionary and by the interference that he ultimately did not. And so we think that's a straightforward application of the rule that the employee would have structured his leave time differently absent the discouragement. And how would we measure harm on that theory? Is it any different from the constructive discharge? I don't believe so. Not on this case, Your Honor. I don't think so either. I don't see it. And what concerns me here is his retirement, frankly, strikes me as a pretty extreme response to one HR staffer taking even an unlawful approach, according to his testimony. Let's suppose what we had is somebody in HR who makes a mistake and in response to the first request says, you don't have any time available. And the response is, well, I'm going to quit. Don't we expect employees to at least to push back a little bit before leaving the employer entirely? Your Honor, a couple things on that. First, I think looking to pages 211 to 215 of the record, we see that Mr. Ziccarelli did engage in a little bit of a back and forth with Missionary. He asked if he would be disciplined. He said he was worried about being disciplined and asked if he would be disciplined. She was non-responsive. He asked if he could take his paid sick time. She was non-responsive. So, Your Honor, I think reading page 46 of the record together with 211 to 215, it's not quite as simple as Mr. Ziccarelli just giving up after Missionary said one or two comments to him. And also, on the damages question, I took the liberty of looking at the Seventh Circuit's model jury instructions. And we don't cite them, but given that I'm in the Seventh Circuit, for the purposes of the damages calculations, it says that it's appropriate to award lost wages, benefits, but reduce them by the amount that the plaintiff received from other employment, and then also that the plaintiff has a duty to mitigate. So, Your Honor, I think the concern about a windfall is substantially taken care of by those jury instructions, as they are in just the mine run of employment cases. And I'll also note that both the statute and the model jury instructions, I think, flowing from the statute, don't make a distinction between interference claims and retaliation constructive discharge claims. It's the same sort of structure for damages across the board. Your Honor, if there are no further questions on discouragement, I'd like to briefly turn to the lack of information as interference claim. An employer also interferes with an employee's FMLA rights when the employee notifies their employer of an intent to take FMLA leave, but the employer fails to provide the employee with information required under the regulations. Are you sure this is preserved from the district? So, what page can you point us to in the summary judgment briefing below where the information deficit argument was raised? Your Honor, candidly, I don't think it was raised below. But this court in a case called Jiva that's cited in our reply brief says that if defendants choose not to argue forfeiture before this court, then they waive that forfeiture argument. And here, I think the most helpful site is the red brief at page 13, where my friends on the other side wrote, it's a brief little phrase at the beginning of the sentence, something along the lines of, even if this was argued below, comma, we don't think that's enough to squarely argue forfeiture here. And then the red brief goes on for several pages to brief the merits of these claims. So, Your Honor, all the facts are in the record below, and all the legal arguments are before this court. And Jiva's fairly express about this, quoting directly, the court must treat the issue on the merits. I'm not in the business of telling courts what they must or must not do, but that's directly the quote from Jiva. So, Your Honor, I do think it's appropriate to reach the merits of these claims. I would simply say, as a former district judge, the idea that an issue must be addressed to reverse on something that I never saw as a district judge is troubling, but maybe that's something we need to sort out in our own case law. I understand, Your Honor. Very briefly, Mr. Ziccarelli provided notice. He called Ms. Schenaui. He indicated that he wanted to take FMLA leave and made her aware of the timing and duration of the leave, nothing more is required for him to meet his notice obligation, but there's nothing in the record to indicate that defendants issued the designation notice required by 29 CFR 825-300-D, and the record reflects that Ms. Schenaui was not responsive in answering Mr. Ziccarelli's questions about whether or not he would be disciplined and the possibility of taking sick time, which is a violation of 825-300-C5. So what do we do? This is just a troubling fact pattern under the FMLA where you're arguing this formal notice of designation is required. Defendant says, we don't have a scrap of paper on this. We have a phone call, and that was it. So what would we have designated at that point? Your Honor, because Mr. Ziccarelli met his notice requirement, which is fairly functional, the regulations in this court's decisions in Abachon, Lutz, Rishi make clear that just making your employer aware of the intent to take leave and the approximate duration and timing of the leave is enough that then these affirmative duties under the regulations do kick in, Your Honor. Both the designation notice and the duty to responsibly answer Mr. Ziccarelli's questions, which even if the designation notice, the timing and the fact pattern, Your Honor, is a little bit troubling, I think the duty of responsiveness very clearly attaches in the conversation that Ms. Schenaui had with Mr. Ziccarelli, and I think the record is clear that, similar to what this court remarked on in writings, Mr. Ziccarelli requested clarification, and he didn't receive a response. If there are no further questions. All right. Thank you very much. Thank you. Ms. Mullen, then we'll hear from the Department of Labor. Ms. Mohan. May it please the Court. My name is Erin Mohan. I'm here on behalf of the United States Department of Labor as amicus. The district court erred in this case when it said that Mr. Ziccarelli had to show that he was denied leave, rather than that his employer interfered with his leave. The statute, the Secretary's controlling regulations, case law in this circuit and other circuits are all in agreement on this point. An employer can violate the FMLA by interfering with an employee's FMLA rights, including by discouraging the employee from using FMLA, as well as by outright denying FMLA leave. The statute is unambiguous on this point. The FMLA prohibits an employer from interfering with or denying FMLA leave, and for good reason. The point of the FMLA is to provide job-protected leave when someone has a baby, needs to care for a family member with a serious illness, or, as in this case, needs to take care of their own serious health condition. If an employer could take actions to discourage or deter an employee from taking leave without outright denying it, that would severely undercut those protections. That's why the Secretary's regulations make clear that there are a number of actions an employer can take, such as discouraging leave, that constitute interference in the statute. And that's why numerous courts, including this court in Pretty, have cited approvingly to those regulations. In inviting the government to participate in this case, the court asked specifically about potential intra- and inter-circuit splits in the case law on these issues. There's no disagreement among the courts on the core question this court asked here, which is whether or not you can have a violation of the FMLA through interference without denying it. The courts are in agreement that you can, but as Your Honor pointed out, there is some loose language in some of the cases which can benefit from some additional elaboration. There is some language in this circuit, but many other circuits, where you see sort of a standard recitation of the elements of interference, and that recitation says that denial is required. As we discussed in our brief, those cases are not squarely addressing the question here of whether interference is sufficient, and so any reference to denial there would be dicta and would not be binding on this court. There's also some language in the Eighth and Third Circuits case law, which first recognizes that discouragement is sufficient to violate the FMLA, and then goes on to say denial is required. And the issue there is that the courts are getting at there is not the issue of what constitutes interference, but actually this question of whether harm was present necessary to violate the FMLA. As to the court's question about harm, as my colleague pointed out, this court has held in Preddy and in Lutz that it's sufficient to satisfy the harm requirements if an employee takes less leave or would structure their leave differently. And in this case, you have a situation where Mr. Preddy, I'm sorry, Mr. Ziccarelli, you know, in response to what he alleges was discouraging him from taking leave, resigned his position. But it would be strange to say that if you have someone such as in the Preddy case who is discouraged from taking leave and therefore does not take the leave but continues to be employed, that that person is harmed. Whereas in this case, if someone is discouraged from taking leave, as he alleges, is discouraged from taking leave and then quits, that person would not be harmed. And in terms of any remedy, the FMLA is clear that there does have to be a nexus between the monetary damages or equitable relief. So that would be sort of a question that could get worked out at the damages phase. Judge Hamilton, can I ask one question? Please. In the former cases that you're referring to where an individual doesn't make the choice to resign her position but keeps on working that way, I don't mean to put you on the spot here, but just based upon your knowledge of the statute and the case law around the country, how have courts measured damages in those instances? I'm not precisely sure in all instances because often you see this issue come up in summary judgment. But, for example, there was, I'm looking at, I believe it was in the D.C. Circuit, there was a case where an employee was discouraged from taking leave. I think it's actually McFadden. There was a case where an employee was discouraged from taking leave, took less leave than she was entitled, remained employed, paid someone else to take care of her spouse who had cancer, and she was entitled to the cost of that care. And that's actually in the FMLA, the idea that the statute itself in 2617, the idea that the cost of alternate care could be a form of relief under the FMLA. Okay, thank you. Thank you very much, Ms. Mohan. Then for the sheriff, Ms. Ory. Good morning. Good morning, and may it please the court. I am Assistant State's Attorney Kathleen Ory, and I represent the defendants, Tom Dart in his official capacity as sheriff, individual Waiola Shinawee in Cook County as indemnitor. Can I just ask, at this point in this case where there's only the FMLA claim, is there any reason for any defendant other than Sheriff Dart to be in the case? So under the FMLA statute, individual can be liable if the plaintiff can prove that the individual themselves discouraged FMLA leave. But here, that should not be before you because no one denied, retaliated, or otherwise interfered with plaintiff's FMLA rights. Ms. Shinawee provided accurate information in the single telephone call she had with Mr. Ziccarelli in September 2016. Go ahead. I look like you guys are about to ask a question, so I paused. The record establishes there was no FMLA retaliation or interference, and this court should affirm the district court's granting of summary judgment. Do you agree we have to take the plainest version of this phone call? It's true. Yes, I agree. Because it's not entirely clear. Your briefs want to debate that. And threatening disciplinary action without plaintiff even having said how much time he needed sure sounds like discouragement to me. Plaintiff had been employed for 27 years at the Sheriff's Office, and he himself had been approved for taking FMLA since 2009. He knew how to apply for FMLA. At his deposition, plaintiff admitted that he knew he could take 12 weeks of FMLA a year. That's page 40A of the record. He conceded he had never been disciplined for FMLA use, and that Ms. Shinawee never indicated that she would initiate discipline against him. So, Ms. Orey, when I read your brief on that, I actually found it pretty persuasive with an important qualification. It may explain why you win after a jury trial. And going back to the point Judge Hamilton was making, I don't know that the past is prologue for fully accounting for what was said according to the plaintiff in this particular discussion. He's told, do not take any more leave. Don't do it. Okay. If we suppose that a jury credits that version of events, I know that's not what you're advancing, but suppose that the jury credits that. Why is that not interference? During this single telephone call, Ms. Shinawee... But it's not just any old random person, right? It's the, I don't know what her title is, but the FMLA manager. It's pretty authoritative. The plaintiff had been working at the sheriff's office and had taken FMLA himself. He knew Ms. Shinawee could only approve FMLA leave. And at the time he made the request, he did not have enough FMLA remaining to take 320 hours. She could not approve that. Did he tell her, according to his account, how much time he needed? He told her he needed eight weeks of FMLA. But her response was, at least as he's testified, do not take any more FMLA leave. So, yeah, of course, he's got four and a half weeks banked. At the end of the day, she can't prevent him from taking the four and a half weeks. She can't afford him from taking supplemental sick leave. He can go on his eight-week treatment plan and what have you. But at the summary judgment stage, don't we have to look at how a jury could interpret the statement, do not take any more leave? Yes. At the summary judgment stage, you do have to credit plaintiff's theory of what the conversation was. But the plaintiff knew that Ms. Shinawee could only approve FMLA leave, and that's what he was seeking from her. If he was seeking to use his remaining vacation time or sick time, he asks for that from his chain of command. But the conversation that we're focused on is not a conversation about confusion between FMLA leave and sick leave, where they're talking past one another, and he's saying, no, no, no, I'm talking about sick leave. And she says, well, I'm talking about FMLA. It's not that at all. What he's focused on is the statement, do not take any more FMLA leave. I understand. And what I'm saying is if he was seeking 320 hours of FMLA leave in September, he did not have that. She did not have the ability to approve it. He was already approved to take FMLA leave in 2016 for intermittent leave. So the question is – It seems like we're just debating the inferences that you could take away from the statement. That seems to me to be a jury issue. I mean, you've heard the point. And I appreciate it. I mean, the issue is Ms. Shinawee only handles FMLA, and plaintiff had been working at the sheriff's office for 27 years. He knows how to take sick leave. He knows how to take vacation leave. He knows how to take FMLA leave. And so to the extent that he was confused after this conversation, obviously Ms. Shinawee cannot get into his head, but to the extent that he was confused after the conversation, Judge Hamilton, you noted, there's a little bit of back and forth. He could have reached out to someone else in HR. He could have talked to a supervisor or one of his coworkers to say, I know I get 12 weeks off FMLA because he knew that, but I'm not getting it. What's going on? But instead he just retired a few days later. There was not that time to raise additional questions or for Ms. Shinawee to clarify what she said to him. Because Ms. Shinawee's deposition, as I know you probably are aware, she told him he couldn't take any more than he was entitled to. And I can't discipline him, but if he takes unauthorized leave, which is a separate department that handles it going forward. So in the Sheriff's Department, I understand you've got Ms. Shinawee as a specialist for the FMLA. But at least as I understand the sweep of the statute and actually some fairly specific regulatory requirements, an employer in this kind of a situation seems to have some responsibility to work with the employee, right, to clarify. Let's imagine slightly different evidence where a plaintiff comes in and says I need eight weeks. She says you don't have it. He says, but I've got enough sick leave. At some point in there, isn't the employer understood institutionally required to say in essence you can take your remaining FMLA leave and then use your paid sick leave? Absolutely. And again, as you acknowledge, that is not the facts here. Plaintiff could have structured his time that way if he had sought approval. He could have. And the question is what responsibility would an employer have to help explain that perhaps to an employee who has less experience with the FMLA or just policies that may be less than transparent to employees? Sure. Well, in this case, as I said, Mr. Zaccarelli was approved for intermittent leave. He could take seven days of FMLA per month. That's what he requested, and that was what he was approved for. It sounds like he was seeking eight weeks of consecutive leave, which is an entirely separate request. And so what he would have needed to have done, just like I stated, there's between 1,700 and 2,000 sheriff's office employees on FMLA on any given day. So he would have submitted a new request for FMLA. There are up to 2,000 employees in the sheriff's office on FMLA. They are approved to take FMLA leave. Oh, not actually out, but with approved requests. Not necessarily out. Okay. So, I mean, the sheriff's office has to have a policy, you know, and the policy, as Mr. Zaccarelli has done in the past, is you submit the request with the necessary medical paperwork, and then someone like Ms. Shinery reviews it. Here it seems like Mr. Zaccarelli was seeking a new request for FMLA because he was seeking eight weeks of consecutive time, which is not what he was seeking before. It's a separate request. Ms. Shinery could not have approved it because he didn't have that much time left. But in the denial, she would have stated you don't have, you only have this amount of time left. And then it would have been incumbent on him to use his sick time or vacation time. But here, as we know, Mr. Zaccarelli didn't do that. He just had this single telephone call with Ms. Shinery, where she told him accurate information. He didn't have enough time left. And we've been talking about these cases, you know, Preddy, which Judge Ripple was on the panel when it was decided. The language was, you know, interfere or discourage. But the facts are different because in Preddy, the plaintiff in that case, the employee, his contract was not renewed after he took the FMLA. There was a negative impact to his employment as a result of his taking the FMLA. That didn't happen here. Other cases of interference talk about denying FMLA. That didn't happen here. Or making an employee work while on FMLA. That didn't happen here. What happened was Ms. Shinery provided accurate information, and then Mr. Zaccarelli quit. There are no cases, not in the Eighth Circuit or the Third. We have to assume it was a threat, right? I mean, you keep telling us she gave accurate information, and I understand that's your position, as Judge Scudder indicated. But that's not what we've got in front of us on summary judgment. What we've got is a pretty transparent threat. Don't take any more leave or you're going to face discipline. The plaintiff knows that Ms. Shinery cannot discipline him and that he can take 12 years. That's pretty cold comfort, I've got to say, for an employee who's dealing with the HR manager of FMLA leave. But I guess it just goes to his mindset about what kind of threat it was because under the CBA there's a process of discipline, and the first step is attendance review. Maybe it's a written recommend. The first attendance violation is not going to result in termination. That would be set forth in the CBA. And Mr. Zaccarelli has been working here for 27 years, so he has the knowledge of not only what's happened to him but what's happened to coworkers and how the process works. Can I ask you about the information claim, the information deficit issue? Yes. That did not seem to me to be the subject of anything in the district court. It was not. Okay. And is it your position that it's waived or forfeited and not before us? I believe that since it was not before the district court, it is waived. And I didn't cite the case saying it's waived just because I know that plaintiff's counsel in this case was appointed, and so I know that she was probably trying to expand the grounds. And I briefed it on the merits just because Mr. Zaccarelli understands how the process for seeking FMLA works at the sheriff's office. And a single telephone call, I mean, that's not how you get FMLA at the sheriff's office. You submit the paperwork. Yeah, it just seems to me we can just stay out of the claim. I mean, some of that gets how information is provided, what requests suffices, et cetera, can open up a new set of issues. But the district court never even passed on it. That's correct. And if I can go back to how the plaintiff wants to greatly expand the definition of what it means to have FMLA interference by merely allowing a plaintiff to say that he felt discouraged to take FMLA, that is very subjective, and it would be not fair to the employer to know how an employee is going to feel after a single conversation. And there are no cases that hold that merely feeling discouraged is enough for an FMLA violation. If I can talk about them. The Waddell case, which is out of, I think, the Eighth Circuit, that court held it was not FMLA interference when the employer told the employee there are consequences for initiating litigation. That sounds kind of sinister, but that was not FMLA interference because that was accurate information that when you bring a lawyer in and it escalates the litigation, things cannot be resolved as easily. And as the district court noted, plaintiff points to no facts that he could not take the remainder of his FMLA leave. Let's vary the facts here a little bit. Let's suppose Mr. Ziccarelli doesn't think he needs leave for his own care but to care for a family member. He has this conversation with Ms. Shinaway. According to his version of it, she says don't take any more leave. And he takes that to heart. He does not file a formal paper written request for FMLA leave and instead hires someone else to care for the family member for those weeks. Is that a viable interference claim? For the cost of the caregiver where he has available time. I think that Mr. Ziccarelli needs to have more than a single telephone call to say that he was unable to take FMLA interference. So no matter what she said, that would not be enough as far as you're concerned. Do this and you're going to get fired, and I'm going to make sure it happens. That's not enough? Those are not the facts. No, but you're saying one phone call is not enough. I'm imagining a worse phone call. Okay. I am saying that if an employer says do this and you're going to get fired, then I think that, yes, under those circumstances. But my understanding of FMLA damages is you're only entitled to the, like in this case, Mr. Ziccarelli had 176 hours left. I believe the damages would be what he could have been paid on sick leave for that time. Well, there's also case law that would say that if you continue working, then the caregiver expenses would be covered. So that would be an actionable claim for interference. Yes. Okay. Is there anything else you want to tell us? Mr. Ziccarelli worked for the office for 27 years and took FMLA for nine years. He was never disciplined, and the district court should be affirmed. Okay. Thank you very much, Ms. Orey. Rebuttal, Ms. Mullen. Very briefly, Your Honor, I just want to touch on a point that my colleague from the United States made about prejudice. Mr. Ziccarelli went into the phone call with Ms. Chenaui planning to exhaust his FMLA leave and planning to exhaust his paid sick leave. But Ms. Chenaui's comments discouraged him from doing so. He would have structured his leave differently absent that discouragement. That's prejudice. And I just want to emphasize that he badly needed this eight-week hospitalization. Being prescribed eight weeks of hospitalization by your doctor for PTSD is a very serious matter, and he felt that he needed to take it. So he involuntarily resigned rather than waiting to be disciplined. All right. Thank you very much, Ms. Mullen. Our thanks to all counsel, and we appreciate the Department of Labor's response to our request for an amicus brief and appreciate Ms. Mullen, you and your colleagues at Georgetown's taking up our invitation as well. The case is taken under advisement.